**COCA–COLA BOTTLING COMPANY OF BALTIMORE et al.**

v.

**The UNITED STATES.**

**Nos. 174–70 thru 181–70.**

United States Court of Claims.

Nov. 14, 1973.

William P. McClure, Washington, D. C. attorney of record, for plaintiff

John D. Heckert and John I. Coldren III, Washington, D. C., of counsel.

Scott P. Crampton, Asst. Atty. Gen., for defendant. Gilbert E. Andrews, Jr. and Frances Foltz Kane, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## OPINION

SKELTON, Judge:

These suits were brought by eight wholly-owned subsidiary corporations of the Coco-Cola Company, engaged in the business of bottling and selling carbonated beverages, to recover Federal income taxes totaling $181,995.19, plus assessed interest and statutory interest, for the calendar years 1962, 1963, and 1964.[1] The tax was paid as the result of the disallowance of investment credit which plaintiffs had claimed under Sections 38, 46, and 48 of the Internal Revenue Code of 1954,[2] with respect to returnable glass bottles and returnable wooden or plastic cases that were purchased and put into service by the plaintiffs during the years in issue. The suits are before the court on a stipulation of facts by the parties for a decision on an issue of law.

The parties agree that the returnable bottles and cases were tangible personal property used in plaintiffs' trade or business and have stipulated the percentages of bottles and cases that last more than eight years, from six to eight years, from four to six years, and less than four years, so that there is no dispute regarding the applicable useful life of these properties for investment credit purposes. The parties disagree as to whether the bottles and cases constituted property on which depreciation was allowable under the applicable statute and regulations pertaining to the investment credit, and, if so, whether plaintiffs' "qualified investment" was the original cost of these properties, or cost less deposit value.

The three specific questions presented in these suits are as follows:

1. Whether these returnable bottles and cases could be "property with respect to which depreciation * * * [was] allowable" within the meaning of section 48 of the Internal Revenue Code, even if it were determined that plaintiffs did not in fact depreciate such property, but rather, deducted the cost as a current expense.

---

1. Only the year 1964 is involved in Docket Nos. 176–70, 177–70, and 178–70.

2. As amended by the Revenue Act of 1962, Pub.L. 87–834, § 2, 76 Stat. 962, 963, 967 (1962). All statutory references are to the Internal Revenue Code of 1954, *as amended*, unless otherwise indicated.

2. If not, whether plaintiffs' method of accounting (under which they deducted currently the cost less deposit value of bottles and cases placed in service during the year and also deducted the deposit value of bottles and cases when broken and scrapped at the plant) constitutes a method of depreciation within the meaning of section 167 of the Code.

3. If plaintiffs prevail on either question one or question two and are thus found to be entitled to the investment credit on returnable bottles and cases, whether their "qualified investment" within the meaning of section 46(a) and (c) (i.e., the amount on which the investment credit is computed) should be determined by reference to their cost, or rather, by reference to cost reduced by the amount of security deposits.

We have found against plaintiffs on both question one and question two for all of the reasons set out below. Because we have determined that plaintiffs were not entitled to claim the investment credit on returnable bottles and cases during the years at issue, it was not necessary for us to consider the proper means of determining plaintiffs' "qualified investment." The material facts may be briefly summarized.

One marketing method used by plaintiffs was to bottle their beverages in returnable glass bottles and place the bottles in wooden or plastic cases for delivery to customers. These bottles and cases were purchased new from various manufacturers. Upon receipt, the newly purchased bottles and cases were made available for use in plaintiffs' plants by placing them in the respective plaintiff's supply inventory. As soon as they were needed, which could even have been the same day, they were removed from the supply inventory and filled with beverage for the first time.

When the beverages contained in the bottles were placed in the cases and delivered by plaintiffs to their customers, the customers were required to pay for the beverage and to make a deposit on the bottles and cases. Upon return of the empty bottles and the cases, the deposits were refunded. During the taxable years in issue, the deposit value on bottles, with the exception of the large 26-ounce size, was between one-quarter and one-third of their cost. On 26-ounce bottles, the deposit value was 42 percent to 49 percent of their cost. The deposit value on cases varied from about 2 percent to 25 percent of cost on 24-pocket cases and from 30 percent to 36 percent of cost on 12-pocket cases.[3] Defendant does not dispute, for purposes of this case, that title to the returnable bottles and cases remained with the respective plaintiff when its bottles and cases were in the possession of customers.

Some bottles and cases were broken and scrapped in the plant when they were too damaged to be reused. These broken and scrapped bottles and cases had little or no junk or scrap value and there was no relationship between deposit value and junk or scrap value. Other bottles and cases were "lost in the trade," i. e., not returned by customers, and surveys were conducted by plaintiffs to determine the amount of such losses.

Prior to 1939, those plaintiffs who were then owned by the Coca-Cola Company capitalized their bottles and cases and claimed depreciation deductions on them. In 1939, however, the Coca-Cola Company requested and received permission from what was then the Bureau of Internal Revenue for its bottling subsidiaries to change their method of ac-

3. The cost of 6½-ounce, 10-ounce, 12-ounce, and 16-ounce bottles ranged from $.0583 to $.0781 per bottle, and a deposit value of $.02 per bottle was used by all companies, except the two West Coast companies which used a deposit value of $.03 per bottle. The cost of a 26-ounce bottle was from $.1014 to $.1170 and a $.05 deposit value was used. The cost of 24-pocket cases was $1.07, except on the West Coast where it was $1.12. Different plaintiffs used deposit values of $.02, $.12, $.27 and $.28. The cost of 12-pocket cases was $1.10, $1.27, and $1.30, and a deposit value of $.40 was used by all companies that used them.

counting for bottles and cases. Similarly, in 1947, permission was requested of the Commissioner of Internal Revenue, and received, for several newly-acquired bottling subsidiaries to use the same new method. During the years in issue, plaintiffs accounted for their returnable bottles and cases in accordance with the method approved in 1939 and 1947. Under this method, each plaintiff wrote off the cost less deposit values of bottles and cases in the year they were purchased and put into service, and it wrote off the deposit value in the year when these bottles and cases were either discarded at its plant or "lost in the trade."

On its tax returns for the years in question, each plaintiff deducted the cost less deposit value of newly-purchased bottles and cases as well as the deposit value of bottles and cases scrapped at its plant. This deduction was not made on the depreciation schedules attached to the returns, but is instead made on the returns as a cost of goods sold entitled "container expense." Although the deposit value of bottles and cases "lost in the trade" is written off, no deduction is claimed since the deposits collected from the customers cover this expense.

The method of accounting used by plaintiffs during the years in issue, briefly stated, was as follows. Plaintiffs maintained asset accounts in which they carried the deposit value of returnable bottles and cases. The remainder of the cost of new bottles and cases (the difference between deposit value and purchase price) was charged to a "container expense" account immediately after receipt, when the bottles and cases were first placed into inventory. When the bottled beverage was sold, plaintiffs debited the full amount received to cash, or to an account receivable. Credits were made to deposit liability and cash accounts for the respective parts of the

amount received that represented the sales price of the bottled beverage and the deposit value of the bottles and cases. When bottles and cases were returned, the deposits were refunded in cash, or by a credit to the customer's account receivable, and the deposit liability account was reduced accordingly. The deposit value of bottles and cases broken and scrapped in the plant was written out of the asset account and charged to expense, while the deposit value of bottles and cases determined to be "lost in the trade" was written out of the asset account and charged to deposit liability.

In 1965, plaintiffs requested permission to change from the above-described method of accounting for the bottles and cases to a method whereby the cost of bottles and cases would be depreciated down to (but not below) deposit value over the period of average useful life. The Commissioner of Internal Revenue granted plaintiffs permission to change to a depreciation method of accounting for all returnable bottles and cases *acquired on and after January 1, 1965*. Plaintiffs also requested and were given a ruling that they were entitled to the investment credit on bottles and cases *acquired on and after January 1, 1965*.

For the years involved, 1962, 1963, and 1964, plaintiffs filed separate Federal income tax returns on a calendar year basis, claiming the investment credit for returnable bottles and cases. Upon audit, the claimed credits were disallowed and deficiencies were assessed. The assessed deficiency amounts plus assessed interest were paid. Claims for refund were timely filed and denied and these suits followed.

Sections 38 and 46 grant to taxpayers a tax credit of seven percent of their "qualified investment" in "section 38 property." The term "section 38 property" as defined in section 48(a)(1),[4]

---

4. 26 U.S.C. § 48(a)(1) (1964) reads, in pertinent part, as follows:

"§ 48. Definitions; special rules.

"(a) Section 38 property.—

"(1) In general.—

"Except as provided in this subsection, the term 'section 38 property' means—

"(A) tangible personal property, or

"includes only property with respect to which depreciation \* \* \* is allowable." The threshold issue in these cases is whether depreciation is "allowable" within the intendment of section 48 if plaintiffs could have recovered their cost through depreciation but elected instead to expense currently.

Section 1.48–1(b) of the Treasury Regulations, 26 C.F.R. 1.48–1(b), states in relevant part:

> (b) *Depreciation allowable* (1) Property is not section 38 property unless a deduction. for depreciation \* \* \* with respect to such property is allowable *to the taxpayer* for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and *the basis (or cost) of the property is recovered through a method of depreciation,* including, for example, the unit of production method and the retirement method as well as methods of depreciation which measure the life of the property in terms of years. \* \* \*
>
> \* \* \* \* \* \*
>
> (3) *If the cost of property is not recovered through a method of depreciation but through a deduction of the full cost in one taxable year, for purposes of subparagraph (1) of this paragraph a deduction for . depreciation with respect to such property is not allowable to the taxpayer.* \* \* \* [Emphasis supplied.]

The regulations thus focus upon the situation of the particular taxpayer and specifically state that a deduction for depreciation is not "allowable" if the cost is recovered through deduction of the full cost in one taxable year.

Plaintiffs maintain that Congress, in using the term "allowable" in section 48, was merely describing the type of property with respect to which the investment credit was available and did not intend to make eligibility for the investment credit depend on the particular method of cost recovery used. Accordingly, plaintiffs argue that the above-quoted regulations are invalid insofar as they deny the investment credit to a taxpayer who could have taken depreciation but chose rather to expense currently. If Congress had intended such a result, it would have used the term "allowed" rather than the term "allowable."

Defendant, on the other hand, supports the validity of the regulations. It contends that section 48 requires that depreciation be "allowable" *to the taxpayer* and urges that depreciation is not "allowable" to the taxpayer if an election has been made to expense.

■ Treasury regulations, construing as they do complex tax statutes, must be upheld unless they are unreasonable or in clear conflict with the statutory language. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1931); Wills v. Commissioner, 411 F.2d 537, 543, n. 1 (9th Cir. 1969). Moreover, considering the specific delegation of authority to the Commissioner in section 38(b) to prescribe regulations governing the operation of the investment credit, section 1.48–1(b) of the Treasury Regulations is entitled to even more than the usual great weight accorded Treasury Regulations and should not be overturned unless clearly unlawful. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930); Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 (1930). There is support for the regulations here in question in the legislative history (see H.R.Rep.No.1447, 87th Cong., 2d Sess. 10, A8, A12, A17 (1962); S.Rep.No.1881, 87th Cong., 2d Sess. 143, 149, 154 (1962)) and in the

---

\* \* \* \* \*

"Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more."

plain terms of section 48(a), which limits the investment credit to "property with respect to which depreciation * * * is allowable." The word "allowable" would be meaningless unless it referred to a particular taxpayer. If Congress had meant to include property of a type which generally might be depreciated, and had not intended that a taxpayer's particular circumstances be considered, it could easily have referred less specifically to "depreciable property."

Defendant has cited two cases which interpreted section 48 as requiring that depreciation be "allowable" to the particular taxpayer. In Myron A. Anderson, 54 T.C. 1035 (1970), aff'd, 446 F.2d 672 (5th Cir. 1971), the taxpayer had no basis in the oil well equipment on which an investment credit was claimed because it had been purchased with the proceeds from the sale of production payments subject to a pledge to use the proceeds to purchase such equipment. The Tax Court did not consider it necessary to decide whether section 1.48–1(a) and (b) was valid, since it held for the government on the ground that tax basis is an essential element in determining "qualified investment" under section 46(c) and without a basis there could be no "qualified investment" and thence no investment credit. The United States Court of Appeals affirmed the Tax Court's decision under section 46(c) and held further that section 1.48–1(a) and (b) was valid, insofar as it required that the depreciation deduction be allowable to the taxpayer.

Millers Nat'l Life Ins. Co., 54 T.C. 457 (1970), the second case cited by defendant, considered whether an insurance company, taxable on its investment income but not on its underwriting income, could take the investment credit on property used in its underwriting activities. Since it had been previously decided in Rockford Life Ins. Co. v. Commissioner, 292 U.S. 382, 54 S.Ct. 761, 78 L.Ed. 1315 (1934), that depreciation could not be taken on assets used in the production of non-taxable underwriting income, the Tax Court held in Millers Nat'l Life Ins. Co. that neither could the investment credit be taken on such assets.

In Anderson, depreciation was not allowable to the taxpayers because they had no basis in the oil well equipment, and in Millers Nat'l Life Ins. Co., depreciation was not allowable to the taxpayer because the asset was used in the production of non-taxable underwriting income. The instant case is clearly analagous to the two aforementioned cases. Here depreciation is not allowable to the taxpayers because they elected instead to expense the bottles and cases.

One strong indication that Congress did not intend to allow the investment credit to taxpayers who recovered their cost by expensing rather than through some method of depreciation, is the fact that in 1962 and 1963, section 48(g) required taxpayers to reduce their depreciable basis in the investment credit property by the amount of investment credit.[5] Obviously, such a basis adjustment could not be accomplished where taxpayer has written off the entire cost of the property since there would be no basis left to adjust.

We therefore hold that section 1.48–1(b) of the Treasury Regulations is valid and properly states that a depreciation deduction must be allowable to the particular taxpayer in order for property to be "section 38 property" and that a deduction for depreciation is not allowable to the taxpayer if the full cost of property is recovered in one taxable year.

Plaintiffs submit, in the alternative, that their method of deducting currently the cost less deposit value of newly purchased bottles and cases, and the writing off of the deposit value of bottles and cases when they were either broken and scrapped at the plant or determined to

---

5. Section 48(g) was repealed by the Revenue Act of 1964, Pub.L. 88–272, § 203(a), 78 Stat. 19 (1964).

be "lost in the trade" constituted a method of depreciation, thus entitling plaintiffs to the investment credit under the criteria set out in section 1.48–1(b), since depreciation was in fact taken.

■ Depreciation has long been recognized and defined as a consistent, gradual process of estimating and allocating the cost of a capital investment over the estimated useful life of the asset in order to match cost against earnings. Fribourg Navigation Co. v. Commissioner, 383 U.S. 272, 277, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966); Massey Motors, Inc. v. United States, 364 U.S. 92, 104, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960); United States v. Ludey, 274 U. S. 295, 300–301, 47 S.Ct. 608, 71 L.Ed. 1054 (1927); Treasury Regulations § 1.-167(a)–1(a). In *Massey Motors, supra,* at 104 of 364 U.S., at 1418 of 80 S.Ct. the Supreme Court summed it up by stating:

> Finally, it is the primary purpose of depreciation accounting to further the integrity of periodic income statements by making a meaningful allocation of the cost entailed in the use (excluding maintenance expense) of the asset to the periods to which it contributes. This accounting system has had the approval of this Court since United States v. Ludey, 274 U.S. 295, 301 [47 S.Ct. 608, 71 L.Ed. 1054] (1927), when Mr. Justice Brandeis said, "The theory underlying this allowance for depreciation is that by using up the plant, a gradual sale is made of it." * * *

Plaintiffs method of accounting for bottles and cases is not in accord with this description of depreciation. Contrast the above-quoted language with the following recent statement on expense accounting by this court in Anders v. United States, 462 F.2d 1147, 1149, 199 Ct.Cl. 1, 4, cert. denied, 409 U.S. 1064, 93 S.Ct. 557, 34 L.Ed.2d 517 (1972):

> As noted above, Service had previously expensed these rental items, so

that they were no longer shown on Service's books and records as assets. "The expense deduction as permitted by regulation is intended to reflect the cost of [items] *actually* consumed during the taxable year * * *." Spitalny v. United States, 430 F.2d 195, 197 (9th Cir. 1970). * * *

The present consumption of an item is the exact opposite of the gradual sale of an asset and it is therefore apparent that current expensing is the antithesis of depreciation.

Plaintiffs stress the fact that they did not deduct the deposit value of the bottles and cases in the year of purchase, and suggest that they thereby deferred the deduction of a substantial part of the cost (approximately 32%). This is not accurate. Plaintiffs were not entitled to deduct, nor did they deduct, the deposit value of the bottles and cases which were "lost in the trade," *i. e.,* not returned by customers, since plaintiffs were reimbursed for such losses from the deposits. With regard to bottles and cases ultimately determined to have been "lost in the trade," therefore, plaintiffs actually recovered their full cost in the year they were purchased. They recovered their cost less deposit value (through a current tax deduction) when the bottles and cases were purchased and first placed in inventory and they recovered the deposit value (by collecting security deposits) shortly thereafter when the bottles and cases were delivered to customers for the first time. Thus, it is only with respect to bottles and cases broken and scrapped in the plant that the deduction of the deposit value was deferred. The record indicates that the percentage of the cost of bottles and cases actually deferred, to later years, under the above analysis, was roughly between 10 percent and 15 percent.[6] Thus, plaintiffs were writing

---

6. On the basis of the average balance in the bottle asset account each year, Coca-Cola

Bottling Company of Baltimore, for example, charged off approximately 16 percent for

off approximately 85–90 percent of their cost in the first year. Plaintiffs' method of accounting for bottles and cases was a far cry from a "gradual sale" and made no attempt to match cost recovery against income.

Plaintiffs argue that the deductions claimed were reasonable and rely on the second paragraph of section 167(b),[7] which states:

> Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a).

This language does not advance plaintiffs' cause, however, since the allowance must be "otherwise allowable under subsection (a)" and subsection (a) states in relevant part:

> (a) General rule.—
>
> There shall be allowed *as a depreciation deduction* a reasonable allowance for the exhaustion, wear and tear * * *. [Emphasis supplied.]

Plaintiffs must do more than prove their deductions were reasonable. They must prove that they were depreciation deductions and this they have failed to do. Plaintiffs have not even attempted to show that the deductions claimed were comparable to what they would have received if they had depreciated the property under one of the methods prescribed in section 167(b).

Plaintiffs also assert that if the retirement-replacement-betterment method of accounting used by the railroads constitutes a method of depreciation (see Chicago, Burlington & Quincy RR v. United States, 197 Ct.Cl. 264, 455 F.2d 993 (1972), rev'd on other grounds, 412 U.S. 401, 93 S.Ct. 2169, 37 L.Ed.2d 30 (1973); Boston & M. RR v. Commissioner, 206 F.2d 617 (1st Cir. 1953)), then so does their method. The two methods, in fact, are quite dissimilar. Under retirement-replacement-betterment accounting, the cost of additions and betterments are capitalized and remain on the books until the property is retired and not replaced in kind. Only replacements in kind are expensed currently. Such replacements, together with retirements, reduced by salvage value, comprise the depreciation deduction. Moreover, salvage is an important element of the method. In contrast, plaintiffs' method had no step comparable to the capitalization of additions or betterments. They expensed the cost less deposit value of all bottles and cases, without regard to whether they were replacements or additions. Furthermore, under plaintiffs' method of accounting, salvage was insignificant.

Plaintiffs contend that the deposit value on their books was comparable to the unrecovered cost basis that the railroads carry on their books for their track system. However, plaintiffs' bottle and case asset accounts, stated at deposit value, were directly offset by deposit liability accounts. The track asset

---

broken bottles in both 1962 and 1963 and 11 percent in 1964. Coca-Cola Bottling Company of California charged off about 11 percent in 1962 and 1963 and 9 percent in 1964.

7. 26 U.S.C. § 167(b) (1964) reads as follows:

"(b) Use of certain methods and rates.—

"For taxable years ending after December 31, 1953, the term 'reasonable allowance' as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:

"(1) the straight line method,

"(2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

"(3) the sum of the years-digits method, and

"(4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).

"Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a)."

accounts of the railroads, on the other hand, are not subject to any offsetting liability. As pointed out earlier, plaintiffs actually have no unrecovered cost basis in their bottles and cases once they are placed in service, except where such bottles and cases are later scrapped at the plant.

Concerning plaintiffs' alternative argument, we hold that the method of accounting used by plaintiffs during the disputed years was not a method of depreciation.

Accordingly, we hold that plaintiffs were not entitled to claim the investment credit on returnable bottles and cases for the years 1962, 1963, and 1964.

## CONCLUSION OF LAW

Upon the foregoing opinion, which includes the necessary facts made as a part of the judgment herein, and the facts as stipulated by the parties, the court concludes as a matter of law that plaintiffs are not entitled to recover and the petitions are dismissed.