**CAMERON IRON WORKS, INC.**

v.

**The UNITED STATES.**

No. 324–78.

United States Court of Claims.

May 14, 1980.

Donald F. Wood, Houston, Tex., attorney of record, for plaintiff; Marvin K. Collie, Clive Bode, Vinson & Elkins, Houston, Tex., of counsel.

Robert S. Watkins, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Michael J. Dennis, Washington, D. C., attorney of record; Theodore D. Peyser, Kenneth R. Boiarsky, and Iris J. Brown, Washington, D. C., of counsel.

Before COWEN, Senior Judge, DAVIS and BENNETT, Judges.

BENNETT, Judge:

This action for refund of federal income taxes, plus statutory interest thereon, is before the court on cross-motions for summary judgment. Refunds are claimed by plaintiff, Cameron Iron Works, Inc., for the taxable years ended June 30, 1967, 1968, 1972, 1973, and 1974, based on an asserted increase in the amount of investment tax credit due to adjustments made after federal income tax returns for these years were filed. We hold that no increase in plaintiff's investment credit is allowable because of these adjustments and that plaintiff is not entitled to a refund.

Plaintiff is a multinational corporation engaged in the design, manufacture and marketing of a broad range of high-technology products, including hydrocarbon drilling and wellhead equipment, various ball valves and underwater pipeline connector equipment and hydrocarbon production related equipment. Using its own equipment and employees, plaintiff itself constructed some of the assets used in its manufacturing business. These self-constructed assets included such items as furnaces, dust collectors, cropping machines, and metal presses.

On its federal income tax returns filed for the years in question and for many years before, plaintiff used the "prime cost" method of accounting for the cost of self-constructed assets. Under this method, only the direct material and labor costs of a self-constructed asset were capitalized and depreciated over the useful life of the asset. Indirect or overhead costs (such as general plant utilities and plant supervisory salaries) applicable to the construction of such assets were deducted as expense items in the years in which such costs were incurred. Plaintiff claimed an investment tax credit on all qualifying self-constructed assets for the years in issue. The amount of the credit was based on the cost of the assets as computed by the prime cost method.

In connection with an audit of plaintiff's federal income tax returns for the taxable years ended June 30, 1970, 1971, 1972, and 1973, the Internal Revenue Service advised plaintiff in the latter part of 1975 that the prime costs method of accounting for self-constructed assets was impermissible for federal income tax purposes. The Service based its position on the then-recent decisions in *Commissioner v. Idaho Power Co.,*

418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974), and *Adolph Coors Co. v. Commissioner*, 519 F.2d 1280 (10th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Plaintiff was told that it would be required to change to the "full-absorption" method of accounting for federal income tax purposes.[1] Under this method of accounting, both direct and indirect costs were capitalized as part of the depreciable basis of each self-constructed asset.

On October 27, 1975, plaintiff filed a Form 3115, Application for Change in Accounting Method, requesting that the change be made effective for the taxable years ending on and after June 30, 1976. In its application, plaintiff set forth the adjustment required by I.R.C. § 481(a),[2] which was a net increase in its taxable income of $6,363,907.82. This figure was calculated by taking the previously deducted indirect costs incurred in the construction of assets used in plaintiff's business at June 30, 1975 ($10,586,826.23), and subtracting the amount of depreciation that would have been allowable with respect to such costs up to June 30, 1975, if such costs had been capitalized ($4,222,918.36). Plaintiff elected, as provided by Rev.Proc. 70–27, 1970–2 C.B. 509, to take the adjustment required by section 481(a) into account ratably over a period of 10 years commencing with the taxable year ending June 30, 1976.

Shortly thereafter, on November 19, 1975, plaintiff filed claims for refund and amended corporate income tax returns claiming an investment credit for the amounts and years now in question. No action was taken on the claims, but on June 24, 1976, pursuant to his discretion under I.R.C.

§ 446(e), the Commissioner granted plaintiff's application for the change in accounting methods effective for the taxable year ending June 30, 1976. Plaintiff was required by the Commissioner to take the section 481 adjustment into taxable income over a 10-year period as it had elected. The consent of the Commissioner to the change was also subject to the condition that "for any taxable year before the year of transition, there will be no issue pending before the Internal Revenue Service or any Federal Court concerning the accounting method that is the subject of this ruling."

On April 17, 1978, plaintiff refiled amended corporate income tax returns claiming investment credit for the open years prior to the year of the change in accounting methods. Except for the allowance of a small refund on a matter independent from the issues now before the court, no action was taken on any of plaintiff's claims. The petition was filed July 17, 1978, and cross-motions for summary judgment have now been filed by the parties. The issues as presented in the cross-motions are:

(1) whether plaintiff may claim an investment tax credit with respect to the indirect costs which were treated in making the section 481 adjustment as depreciation allowable for the taxable years in question; and

(2) if so, whether plaintiff is precluded from claiming any further investment credit for the years prior to the year of the change in accounting methods because of its agreement to the conditions set by Commissioner in return for his consent to the accounting method change.

---

1. At the time of the audit, plaintiff was already using the full-absorption method of accounting for financial reporting purposes.

2. I.R.C. § 481(a) provides:

"§ 481. Adjustments required by changes in method of accounting

"(a) General rule—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—

"(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

"(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

Under our construction of the statutes and regulations applicable, we hold against plaintiff on the first issue for the reasons set out *infra*. Because we hold that plaintiff is not entitled to claim any further investment credit, it is not necessary for us to consider the second issue as to the effect of the conditions imposed by the Commissioner on the change in accounting method.

I

In order to be eligible for the investment tax credit allowed under I.R.C. § 38, property must be "section 38 property" as defined under I.R.C. § 48(a). Section 48(a)(1) of the Code states that "the term 'section 38 property' * * * includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more."[3] Treas.Reg. § 1.48–1(b) (1972) provides in part:

(1) Property is not section 38 property unless a deduction for depreciation (or amortization in lieu of depreciation) with respect to such property is allowable to the taxpayer for the taxable year. A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation * * *

* * * * * *

(3) If the cost of property is not recovered through a method of depreciation but through a deduction of the full cost in one taxable year, for purposes of subparagraph (1) of this paragraph a deduction for depreciation with respect to such property is not allowable to the taxpayer. However, if an adjustment with respect to the income tax return for such taxable year requires the cost of such property to be recovered through a method of depreciation, a deduction for depreciation will

be considered as allowable to the taxpayer.

This court has considered a somewhat similar situation in *Coca-Cola Bottling Co. v. United States*, 203 Ct.Cl. 18, 487 F.2d 528 (1973). That case involved the method used to account for returnable glass bottles and wooden or plastic cases delivered to the customers of the taxpayers. Under this method, each taxpayer wrote off the cost less deposit value of the bottles and cases in the year in which they were purchased and put into service, and it wrote off the deposit value in the year when these bottles and cases were either discarded at its plant or lost in trade. The taxpayers requested permission to change from this method of accounting to a method whereby the cost of the bottles and cases would be depreciated down to (but not below) deposit value over the period of average useful life. The Commissioner granted the taxpayers permission to change accounting methods for all returnable bottles and cases *acquired on or after January 1, 1965.* Since the change in accounting methods was for the current year and did not affect assets acquired and written off prior to 1965 even though the taxpayers continued to hold and use such assets, no adjustment under section 481 was required to prevent a duplication of deductions.

The taxpayers sued for a refund of taxes for the 3 years prior to the accounting change (1962, 1963 and 1964) claiming an investment credit with respect to the returnable bottles and cases previously written off as current expense deductions. The court determined that depreciation was not "allowable" (within the meaning of Treas. Reg. § 1.48–1(b)(1)) to the taxpayers because they had elected to expense the bottles and cases rather than depreciating them. 203 Ct.Cl. at 28, 487 F.2d at 533. It was therefore concluded that the taxpayers were not entitled to claim any further investment credit.[4]

---

3. Prior to amendment by the Revenue Act of 1971, Pub.L.No.92–178, § 102(a)(2), 85 Stat. 497, section 48(a)(1) of the Code read 4 years rather than 3 years. The 4-year useful life requirement applies to property placed into service on or before August 15, 1971.

4. In making this ultimate conclusion, the court also held that the method under which the

We find the *Coca-Cola* decision instructive, but it is not controlling in this case. Plaintiff concedes the validity of the decision but argues that it is distinguishable because of the absence of any section 481 adjustment. The court in *Coca-Cola* did not consider the exception in the second sentence of Treas.Reg. § 1.48–1(b)(3), quoted *supra*. Plaintiff contends that the section 481 adjustment with respect to the expensed indirect costs of self-constructed property "require[d] the cost of such property to be recovered through a method of depreciation," as that phrase is used in the regulation. Defendant disagrees and emphasizes that the adjustment must be made "with respect to the income tax return for such taxable year."

■ A construction based on the exact language of Treas.Reg. § 1.48–1(b)(3) would necessarily uphold defendant's position. As a general rule, the taxpayer's taxable income is adjusted under section 481 only in the "year of the change" in accounting methods. As was done in plaintiff's case, the Commissioner may allow the adjustment to be taken into account in future years as well as the year of the change. Under Rev.Proc. 70–27, *supra*, the period allowed for such an adjustment is generally 10 years. However, section 481 does not provide for adjustments to the taxable income of any year prior to the year of the change.[5] Therefore, plaintiff's income tax returns for any year prior to the year of the change were not altered, corrected, or adjusted in any way by the Internal Revenue Service in making the section 481 adjustment.

Plaintiff argues against a precise construction of Treas.Reg. § 1.48·1(b)(3) and contends that there is no reason for distinguishing between its utilization of the "short-cut" adjustment method of section 481 to correct its mistake and the correction of the identical mistake through amended returns. In plaintiff's view, the section 481 adjustment was made on a net basis ratably over the 10 years following the accounting method change, rather than through a retroactive adjustment of each prior year's tax return, solely for the purposes of administrative convenience and to avoid opening years otherwise closed by the statute of limitations. The tax effect of the "short-cut" method, plaintiff argues, is identical to a retroactive adjustment.

## II

Before the merits of plaintiff's arguments can be appreciated, it is necessary to discuss the purpose and mechanics of section 481 more fully. Once the actual differences between a section 481 adjustment and the amendment of a prior year's tax return are understood, it becomes apparent that in allowing plaintiff to make the accounting change and section 481 adjustment effective for the then-current year, the Commissioner was motivated by reasons of administrative grace rather than administrative convenience.

■ An adjustment under section 481 is made "in order to prevent amounts from being duplicated or omitted" by reason of the change in tax returns filed after the

---

taxpayers wrote off the full cost of the bottles and cases (less the deposit value) as a current expense deduction did not constitute a method of depreciation under Treas.Reg. § 1.48–1(b)(1) or (b)(2). 203 Ct.Cl. at 28–31, 487 F.2d at 533–36.

5. The increased amount of tax because of an adjustment taken into account in the year of the change is limited under sections 481(b)(1) and (b)(2). This limitation springs from a congressional concern about the effect of bunching income from many years in the year of the change. The tax is limited by treating certain increases in taxable income *as if* it were spread

back over a number of years. Since section 481(b)(1) and (b)(2) merely provide for limitations on the tax for the taxable year of the change, the entire amount of the adjustments which is subject to section 481(b)(1) and (b)(2) is taken into account in such year. Treas.Reg. §§ 1.481–1(d), 1.481–2 (1959).

The Commissioner is also given discretion under section 481(c) and Treas.Reg. § 1.481–5 (1959) to prescribe such additional methods as may be agreed upon between the Commissioner and the taxpayer for allocating an adjustment to limit the impact of an adjustment in any one year.

change in accounting methods. In *Western Casualty & Surety Co. v. Commissioner*, 571 F.2d 514, 520 (10th Cir. 1978), the court stated that "§ 481 adjustments are to be used to prevent duplication or omissions in taxable years after the year of the change," and the court further noted that the Commissioner may make section 481 adjustments "despite the fact that the duplication or omission might not occur for many years after the year of the change in accounting method," citing *Adolph Coors Co. v. Commissioner, supra,* 519 F.2d at 1284. Thus, the focus of section 481 is the prospective effects of the accounting method change rather than a retroactive correction of previous tax returns.

The holding in *Graff Chevrolet Co. v. Campbell,* 343 F.2d 568 (5th Cir. 1965), is not to the contrary. There a taxpayer was required by the Commissioner to change from a method of accounting whereby income was improperly taken into account in later years. Although the years in which the income should have properly been taken into account were closed by the statute of limitations, the court approved the action of the Commissioner requiring the taxpayer to include in income for the year of the change the amounts of income improperly omitted in closed years. In concluding that the statute of limitations was not violated by the Commissioner's action, the court said, "The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise *until the year of the accounting change.*" 343 F.2d at 572. [Emphasis added.]

■ It should also be noted that section 481 speaks only in terms of an adjustment to taxable income. Thus, it is concerned only with preventing the duplication or omission of items of gross income or deduction which enter into the computation of taxable income. The amount of investment credit, of course, is calculated after the computation of taxable income. Therefore, it cannot be increased as part of one all-encompassing section 481 adjustment because section 481(a)(2) provides that there shall be taken into account those adjustments which

are determined to be necessary solely by reason of the change in accounting method in order to prevent amounts from being duplicated or omitted. *See also* Treas.Reg. § 1.481–1(a)(1) (1959); Rev.Rul. 76–437, 1976–2 C.B. 12.

## III

Turning back to the particular facts of this case, it is true that in calculating the adjustment to plaintiff's taxable income the Commissioner took into account the indirect costs previously expensed prior to the taxable year ending June 30, 1976, and the amounts that could have been deducted as depreciation prior to such taxable year if the indirect costs had been capitalized. This calculation was not made in order to effect a retroactive adjustment for the prior years but to prevent a prospective duplication of deductions. By reason of the Commissioner's consent to the change in plaintiff's accounting method, plaintiff was allowed to claim depreciation deductions attributable to indirect costs *previously written off as expenses.* The change in accounting methods applied to self-constructed assets held by plaintiff at the time of the change as well as assets later constructed. In order to prevent a duplication of deductions, plaintiff was required to take into taxable income an amount equal to the remaining allowable depreciation deductions attributable to indirect costs of self-constructed assets owned by plaintiff at the time of the change. This amount was equal to the indirect costs previously expended less depreciation allowable with respect to such costs prior to the year of the change.

The calculation of the amount of the remaining allowable deductions for depreciation and the resulting adjustment in no way disturbed the benefit received by plaintiff through originally deducting the indirect costs as an expense in the current year rather than as depreciation over several years. The amounts which plaintiff is required to take into income over the 10 years beginning with the year of the change will be approximately cancelled by the increased depreciation deductions allowable to plain-

tiff by reason of the change. Because the remaining useful life of some of the self-constructed assets may have exceeded 10 years at the time of the change, plaintiff may be required to take certain amounts into income in years prior to the year in which an offsetting depreciation deduction is allowable. Any tax disadvantage from the anticipation of depreciation deductions is attributable to the adjustment because of the change in accounting methods rather than an adjustment of the expense deductions in prior years.

■ The distinction which we draw between a prospective and retroactive adjustment is more than mere semantics. Plaintiff argues that the purpose and the actual economic effect of the section 481 adjustment were the elimination of the current expense deductions previously taken by plaintiff. The sole advantage to a taxpayer in deducting costs as an expense rather than as depreciation is the deferral of tax to a later date. The value to a taxpayer resulting from the deferral of the payment of tax is recognized by the statutory requirement that a taxpayer must pay interest on any improperly late payment of tax. I.R.C. § 6601(a). Plaintiff has not been, and cannot be, required to pay interest on amounts taken into taxable income because of the section 481 adjustment for any period prior to the year of the change. No interest is due since defendant's claim for additional taxes because of the section 481 adjustment does not arise until the year of the change in accounting methods. *Graff Chevrolet Co. v. Campbell, supra,* 343 F.2d at 572. Thus, the tax advantage of deducting indirect costs as a current expense was not eliminated by the adjustment, and, as we held in *Coca-Cola,* a taxpayer may not enjoy the benefits of both current expense deductions and the investment tax credit.

## IV

Plaintiff had two options at the time of the audit. First, it could have allowed the revenue agent to make the change in accounting methods beginning with the taxable year ending June 30, 1967, the earliest year still open under the statute of limitations. Where the accounting method being changed was impermissible, it is the position of the Commissioner ordinarily to make the change effective for the first open taxable year. If this was done in plaintiff's case, the tax returns for the years ending on and after June 30, 1967, would have been adjusted. Plaintiff would have been eligible under such circumstances to claim an investment tax credit for the adjusted years, but the net tax due would have been immediately assessed and payable *together* with 6-percent interest from the date that the tax was properly due. Second , under Rev.Proc. 70–27, plaintiff could request permission to make the change in accounting methods effective for the current taxable year ending June 30, 1976, and to have the section 481 adjustment taken into taxable income ratably over the next 10 years.

■ In choosing the second option, plaintiff was on notice because of Treas.Reg. § 1.48–1(b)(3) that an actual adjustment of the prior years' income tax returns was required in order to claim any additional investment credit.[6] Defendant has produced an affidavit of a Treasury Department economist alleging that plaintiff is $126,401 better off than if it had changed its method of accounting effective for the taxable year ending June 30, 1967, claimed the additional investment credit for the years in question, and paid the statutory rate of 6-percent interest on the amount of net tax due. Plaintiff contends that the benefit of the so-called "interest-free loan" from the Government under the second option was overstated by defendant and that the difference between the two options is only $49,070. Plaintiff tries to deny that it has received a substantial benefit by choosing the second option, but it is really only quibbling about the size of an admittedly large benefit. Its primary argument is that the benefits under the second option and the benefits of the investment tax credit are

6. Plaintiff has alleged that it was given contrary advice by the revenue agent in charge of its audit, but plaintiff does not press any claim based on this allegation.

not mutually exclusive. However, under the second option, the tax returns for the years in question were not adjusted and the time value of faster expense deductions was not disturbed. As noted above, the benefits of expense deductions and the investment credit are mutually exclusive.

Plaintiff further denies that it in fact had any options. It relies on Treas.Reg. § 1.446–1(e)(3)(i) (1973), Rev.Proc. 70–27, and the instructions to Form 3115, all of which provide that an application for a change in accounting methods must be filed within 180 days after the beginning of the taxable year in which it is desired to make the change. Thus, plaintiff argues that it could only request the change in accounting methods to be made effective for the current year when the auditing revenue agent raised the issue, in this case the taxable year ended June 30, 1976. Defendant alleges that the Commissioner ordinarily would have made the change in accounting methods effective for the first open taxable year, the taxable year ended June 30, 1967, if plaintiff had not made a request under Rev.Proc. 70–27. Thus, plaintiff could in effect choose the first option, defendant maintains, by merely refusing to make a request under Rev.Proc. 70–27. Plaintiff makes no allegation that it wished to make the change effective for the year ended June 30, 1967, but was in some way prevented by defendant. The circumstances of plaintiff's audit and request under Rev. Proc. 70–27 indicate that its primary concern was to secure the accounting method change for the then-current year rather than to increase its investment credit for past years. Based upon the undisputed facts of the case, it must be concluded that plaintiff's decision to take the course of action causing it to lose its right to claim any additional investment credit was freely and willingly made.

V

Finally, plaintiff relies on our previous decisions in *Pacific Far East Line, Inc. v. United States*, 211 Ct.Cl. 71, 544 F.2d 478 (1976), and *Oglebay Norton Co. v. United States*, 221 Ct.Cl. ——, 610 F.2d 715 (1979). Plaintiff contends that under the holding of these cases, an investment credit may be taken if adjustments are made that have the same economic effect as depreciation deductions. It is true, as plaintiff argues, that an investment credit was allowed in these cases with respect to the full cost of the assets even though such costs were not totally recovered in the form of depreciation deductions on the original or amended income tax returns for the years in question. However, plaintiff has oversimplified our holdings in *Pacific* and *Oglebay* and has neglected several important factors in these cases which are not present in plaintiff's own case.

Pacific Far East Line and Oglebay Norton Company were both maritime carriers, each of which had, pursuant to section 607 of the Merchant Marine Act (46 U.S.C. § 1177), created a reserve fund to purchase replacement vessels or to refit existing vessels. A taxpayer maintaining a reserve fund would deposit amounts equal to its annual depreciation deductions on existing subsidized ships. Any federal income tax on the earnings of the reserve fund was deferred indefinitely, and the depreciable basis of any replacement vessel or any refitted vessel was reduced by the amount of tax-deferred income used to pay for the purchase, construction, or refitting of a vessel. The court held that the taxpayers were entitled to an investment tax credit on the full cost of the assets despite any reduction in the depreciable basis because of the use of tax-deferred income.

Plaintiff stresses the language of the court in *Pacific* analyzing the practical effects of the reserve fund arrangement. The court stated that the taxpayer got the equivalent of accelerated depreciation deductions in the years earnings escaped taxation by being deposited in its reserve funds. 211 Ct.Cl. at 88–89, 544 F.2d at 487–88. A taxpayer using a reserve fund would in fact receive more favorable tax treatment than the present plaintiff even if investment credit benefits are disregarded. The tax savings on tax-deferred income would be

made in a year before the property was even purchased or refitted. Here plaintiff saved taxes in the year of construction by writing off a portion of the cost of construction as a current expense.

The heart of our decisions in *Pacific* and *Oglebay* was the silence of Congress as to the effect that the use of tax-deferred income had on the investment credit. We noted that where Congress has intended to reduce the basis for the credit because of the source of the moneys invested, it has made express provision therefor and that the investment credit statute should be interpreted liberally in keeping with its purposes. Quoting *States S. S. Co. v. United States*, 192 Ct.Cl. 795, 803, 428 F.2d 832, 837 (1970), we concluded that it would be anomalous indeed to deprive a *subsidized* industry of the benefit of the credit, since that would work at cross-purposes to the subsidy, which is provided to allow the carrier to compete economically. 211 Ct.Cl. at 82–86, 544 F.2d at 484–86.

█ In contrast to the situation in *Pacific* and *Oglebay*, Congress has made known its intent to exclude an asset from treatment as section 38 property to the extent that its cost is recovered through a deduction of the full cost as an expense in one year. Treas.Reg. § 1.48–1(b)(3) is clear upon this point, and in *Coca-Cola Bottling Co. v. United States, supra,* 203 Ct.Cl. at 26–27, 487 F.2d at 532–33, we found support for the regulation in the legislative history. We have recently reaffirmed the validity of *Coca-Cola* in *Oglebay,* 221 Ct.Cl. at ——, 610 F.2d at 726, and held that our decision in *Coca-Cola* had no relevance to the specific facts in *Pacific.* Just as clearly, the specific facts in *Pacific* and *Oglebay* have no relevance here. Plaintiff is not subsidized through any special tax-deferred income arrangement, and a holding against plaintiff will not work at cross-purposes to the basic goals of the investment credit statute.

█ Plaintiff therefore must be governed by the rules generally applicable to taxpayers as set forth in *Coca-Cola.* As we have found above, the section 481 adjustment did not materially alter plaintiff's sit-uation from that of the taxpayers in *Coca-Cola.* Treas.Reg. § 1.48–1(b)(3) requires that the adjustment be made with respect to the income tax return for the year for which the investment credit is claimed. The section 481 adjustment made in plaintiff's case lacks both the required form and the substance of an adjustment to a prior year's income tax return. While we have held that the investment credit statute should be interpreted liberally in keeping with its purposes, *Pacific Far East Line, Inc. v. United States, supra,* 211 Ct.Cl. at 82, 544 F.2d at 484; *Lykes Bros. S. S. Co. v. United States,* 206 Ct.Cl. 354, 375, 513 F.2d 1342, 1353 (1975); *Alabama Displays, Inc. v. United States,* 205 Ct.Cl. 716, 724, 507 F.2d 844, 848 (1974), we are not free to disregard the precise wording of a regulation which is not unreasonable nor in clear conflict with statutory language. *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); *Fawcus Machine Co. v. United States,* 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397 (1931).

Accordingly, we hold that plaintiff is not entitled to claim any further investment tax credit for the taxable years in question by reason of the section 481 adjustment. We therefore do not reach the issue of whether plaintiff is precluded from claiming any further credit because of its agreement to the conditions set by the Commissioner in approving plaintiff's requested change in accounting methods. Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.