JOSEPH WARGANZ and ELISA WARGANZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warganz v. Commissioner
Docket Nos. 14252-79, 8218-80.
United States Tax Court
T.C. Memo 1981-403; 1981 Tax Ct. Memo LEXIS 340; 42 T.C.M. (CCH) 568; T.C.M. (RIA) 81403; August 5, 1981. Joseph Warganz, pro se. Steven I. Klein, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred R. Tansill pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: Respondent determined deficiencies *343 in petitioners' federal income taxes for 1976 (docket No. 8218-80) and 1977 (docket No. 14252-74) in the amounts of $ 3,464.92 and $ 512, respectively, and a $ 252.51 addition to tax under section 6653(a) for 1976. Due to various concessions by both parties at the hearing and on brief, including respondent's decision not to pursue the addition to tax, the remaining issues for decision are: (1) whether $ 7,833 received by petitioner Joseph Warganz while on sabbatical leave from his employer, County College of Morris, is includable in gross income for 1976 or excludable as a fellowship grant under section 117; (2) whether under section 274(d) petitioners have substantiated employee business expenses in excess of the $ 4,090.22 allowed by respondent in his notice of deficiency for 1976; (3) whether petitioners earned taxable income from the lease of their personal residence in 1976; (4) whether under section 38 petitioners are entitled to an investment tax credit for the purchase of a dictation machine in 1976; and (5) whether under section 280A petitioners are entitled to deduct the cost of maintaining an office in their home. FINDINGS OF FACT Some of the facts have been stipulated *344 and those facts are so found. Petitioners filed joint federal income tax returns for 1976 and 1977 with the Internal Revenue Service. At the time the petition herein was filed, petitioners resided at Boonton, New Jersey. Since September 1, 1968, and continuing to the present time, petitioner Joseph Warganz (hereinafter "petitioner") has been employed as a professor of philosophy with the County College of Morris ("CCM") in New Jersey. During 1974 he applied for sabbatical leave for the 1975-1976 academic school year. On June 20, 1975 petitioner was notified by the president of CCM that he was awarded sabbatical leave for the Spring Semester, February 1 through June 30, 1976, with compensation in the amount of $ 7,833. The notification further advised petitioner to make arrangements with the business office concerning appropriate salary payments during his period of leave. Sabbatical leave was a fringe benefit pursuant to a collective bargaining agreement ("agreement") between CCM and the Faculty Association of the County College of Morris, Inc. To be considered for sabbatical leave pursuant to the agreement, petitioner had to submit an application containing a detailed *345 prospectus of his intended activity, including purpose, objective and plans, and had to describe explicitly how the proposed activity would increase his value to the college. According to the agreement, the purpose and use of sabbatical leave was as follows: Sabbatical leaves are awarded by the Board of Trustees to selected members of the full-time teaching faculty to foster their creative activities related to their teaching disciplines, which will increase their professional effectiveness and usefulness to the College. Acceptable pursuits include * * * intellectual activities or travel clearly relevant to and designed to enhance the recipient's value to the College. Eligibility for sabbatical leave was limited to faculty members who had completed six consecutive years of full-time active service with CCM. Upon acceptance of a sabbatical leave award, a recipient was required to signify, as did petitioner, his obligation to remain in the service of CCM for a period of not less than two consecutive years following expiration of the leave. Petitioner's employment benefits continued to accrue during his sabbatical leave. On his 1976 return, petitioner excluded the $ 7,833 from *346 his gross income contending that it was excludable as a fellowship grant. Respondent, in his notice of deficiency, included the $ 7,833 in petitioner's gross income maintaining that it constituted compensation. In accordance with the terms of his sabbatical leave application, petitioner, accompanied by his wife and son, traveled to the Philippines to study the last writings of the Spanish philosopher, Francisco Marin-Sola, which were collected in the archives of the University of Santo Tomas in Manila. Before arriving in the Philippines, however, petitioner and his family flew from New York City to New Zealand, where they stayed for four weeks and then flew from New Zealand to Australia where they stayed for another week. While in New Zealand and Australia, petitioner casually inquired at six universities about future employment opportunities for him after he fulfilled his two-year post-sabbatical leave commitment with CCM. In addition, he spoke to professors at the various universities about instituting an exchange professorship with CCM. Petitioner and his family arrived in Manila, Philippines on February 19, 1976. For four months they stayed at the home of petitioner's *347 in-laws whom they had visited many times in past years. To help defray household expenses during their visit, petitioner contributed money to his in-laws. During those four months, petitioner commuted to the University of Santo Tomas where he studied the writings of Marin-Sola. Petitioner's in-laws' home was not conducive to his work habits, so for the last two months of their stay in the Philippines, petitioner and his family rented the home of a vacationing executive. In addition, he hired the executive's secretary to do his typing. Petitioner's wife cannot type. The writings of Marin-Sola were in Spanish. Petitioner, fluent in Latin but not conversant in Spanish, quickly learned to translate the Spanish writings due to his Latin education. His wife, though fluent in Spanish, only incidentally assisted petitioner in translating the writings. Petitioner and his family left the Philippines on August 9, 1976 to return to the United States. Petitioner Kept no diaries, records or documents which would substantiate specific employee business expenses incurred during his sabbatical leave. The only evidence of his expenses consisted of copies of checks payable to cash and *348 credit transfer slips which he submitted to respondent during audit. On his 1976 return, petitioner deducted the following employee business expenses in connection with his sabbatical leave: Airplane fares
$ 4,787.97
Meals and lodging
6,645.46
Dictating machine
230.86
Shots
38.00
Total
$ 11,702.29
These figures include expenses incurred on behalf of petitioner's wife and son. The parties stipulate that airplane fares amounted to $ 1,914.84 each for petitioner and his wife and $ 959.09 for his son. In his notice of deficiency for taxable year 1976 respondent allowed only $ 4,090.22 of the claimed employee business expenses consisting of the following: Airplane fare for petitioner
Joseph Warganz
$ 1,914.84
One-third (1/3) of total cash
outlay verified of $ 5,719.55
1,906.52
Dictating machine
230.86
Shots
38.00
Total
$ 4,090.22
Petitioner claims that in addition to the $ 7,612 of disallowed employee business expenses, he is entitled to a further deduction of $ 3,685.54 as employee business expenses incurred in connection with his sabbatical leave. While petitioner and his family were away on sabbatical leave, petitioner rented *349 the family residence in Booton, New Jersey to a Mr. Walker for approximately 8 months. Petitioner received total rental income in the amount of $ 2,975 but did not report any of it on his 1976 return. Respondent concedes that petitioner is entitled to an itemized deduction for his real estate taxes and mortgage interest paid during the year in connection with the Boonton residence. Petitioner did not deduct any expenses incurred in connection with the rental of the Boonton residence and submitted no evidence as to what they might have been. In 1976, petitioner purchased a dictation machine for $ 230.86 which he deducted in full on his 1976 return and respondent allowed as an employee business expense. Petitioner now claims he is simultaneously allowed an investment tax credit of $ 23.09 in 1976 for the purchase of the dictation machine. In 1977, petitioner constructed an office in the basement of his home in which he performed many professorial responsibilities, conducted his real estate investments and wrote an introductory textbook on philosophy (another aspect of his sabbatical leave application). CCM provided petitioner with an office on campus which he admits is his *350 principal place of business with respect to his employment as a professor. Petitioner earned no income in 1977 from writing his textbook which he finished in January of 1978. At present, the book has not been published. On his 1977 return, petitioner claimed miscellaneous deductions in the amount of $ 1,909.54 which included deductions of $ 942.89 for home office expenses, $ 627 for typist services, and $ 15.43 for depreciation on a rug used in his home office. In his notice of deficiency pertaining to 1977, respondent disallowed $ 1,585.32 of petitioner's miscellaneous deduction consisting of the home office expense, typist service and rug depreciation mentioned above. Respondent now concedes petitioner is entitled to deduct $ 627 for typist services. OPINION Section 117(a) provides for the exclusion from gross income of amounts received "as a fellowship grant," subject to the limitations contained in section 117(b) (none of which is in issue here). According to section 1.117-4(c), Income Tax Regs., section 117 does not permit the exclusion of payments *351 which represent compensation for past, present, or future services. However, if the primary purpose of the grant is to further the education and training of the recipient, then the amount can qualify as a fellowship grant. Section 1.117-4(c)(2), Income Tax Regs. In Bingler v. Johnson, 394 U.S. 741, 751 (1969), the Supreme Court upheld the validity of this regulation, comporting as it does with the "ordinary understanding of 'scholarship' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The primary purpose of the County College of Morris in paying the funds to petitioner determines whether he received a fellowship grant. Bailey v. Commissioner, 60 T.C. 447, 451 (1973). It is clear to us that the County College of Morris was not motivated by disinterested generosity in making the sabbatical leave payments to petitioner. CCM expected to receive benefit from the tasks pursued by petitioner during his sabbatical leave. Factors considered in reviewing his application included whether the proposed activities *352 would increase petitioner's "professional effectiveness and usefulness to the College" and whether they were relevant to and designed to enhance the recipient's value to the College. Given this, it is reasonable to conclude that if no benefit to CCM had been evident from petitioner's application for sabbatical leave, it would not have been granted. It is equally clear that petitioner earned his sabbatical leave. Sabbatical leave was a negotiated fringe benefit for faculty at CCM. A faculty member was required to have been employed at CCM for no less than six consecutive years before becoming eligible to take sabbatical leave. Further, the faculty member was obligated to return to CCM for at least two years after the sabbatical leave. Thus, we conclude that petitioner was granted sabbatical leave in recognition of his past services and in consideration of his commitment to perform future services. See Turem v. Commissioner, 54 T.C. 1494, 1506-1507 (1970). In determining the allowable amount of petitioner's claimed employee business expense deduction, respondent disallowed the portion of expenses incurred on behalf of petitioner's wife and son during their travel *353 in New Zealand, Australia and the Philippines maintaining that no bona fide business purpose existed for their presence on the trip. We agree. Section 162 allows a taxpayer to deduct travel, meal and lodging expenses incurred while away from home in pursuit of a trade or business. However, with regard to such expenses incurred by family members who accompany a taxpayer on a business trip, section 1.162-2(c), Income Tax Regs., provides: Where a taxpayer's wife accompanies him on a business trip, expenses attributable to her travel are not deductible unless it can be adequately shown that the wife's presence on the trip has a bona fide business purpose. The wife's performance of some incidental service does not cause her expenses to qualify as deductible business expenses. The record lacks any evidence of a bona fide business purpose with regards to the presence of either petitioner's wife or son during petitioner's trip to New Zealand, Australia and the Philippines. Their presence was purely the result of a personal choice and, consequently, their expenses *354 are nondeductible. Guglielmetti v. Commissioner, 35 T.C. 668 (1961). [3]
Inasmuch as the parties stipulate that petitioner's airplane fare was $ 1,914.84 (which respondent properly allowed as an employee business expense deduction in addition to the cost of a dictation machine and shots), the only employee business expense remaining in dispute is the deductible amount of petitioner's meal and lodging expense. Respondent determined that the meal and lodging expenses attributable solely to petitioner amounted to $ 1,906.52. Before a taxpayer is entitled to a deduction for meal and lodging expenses that qualify as ordinary and necessary business expenses under section 162, he must satisfy the substantiation requirements of section 274(d). Section 274(d) provides that no business expense deduction is allowable for traveling expenses (including meals *355 and lodging while away from home) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * *, [and] (C) the business purpose of the expense or other item * * *" Petitioner did not introduce into evidence any records which might indicate that he is entitled to the meal and lodging expenses claimed. Rather, he relies on statements made by respondent's agent and an informal Internal Revenue Service publication which he claims permits him to deduct a standard allowance of $ 44/day without need of records. Deductions are a matter of legislative grace. A taxpayer seeking a deduction must be able to show that he comes within the express provisions of the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). It has become axiomatic that neither respondent nor this Court is bound by erroneous advice given taxpayers by respondent's agents. Dixon v. United States, 381 U.S. 68, 73 (1965). Furthermore, *356 whether or not petitioner correctly interpreted the Internal Revenue Service publication, it is clear that he may not rely on an informal publication to support a deduction where the tax statute denies it. Johnson v. Commissioner, 620 F.2d 153 (7th Cir. 1980), affirming a Memorandum Opinion of this Court. In short, we must follow the statutes, regulations, and case law in determining whether a deduction is allowable. In the instant case, petitioner has failed to introduce adequate records required under section 274(d) to substantiate his meal and lodging expenses. Accordingly, we sustain respondent's determination as to petitioner's employee business expense deduction. Petitioner did not report the income he received in 1976 from renting the family residence while he and his family were away on sabbatical leave. He half-heartedly explained that had he properly reported the rental income from his Boonton residence, it would have been offset by deductons he would have claimed, e.g., depreciation, and therefore he thought it was not necessary to report the income. We find this reasoning appalling from a taxpayer who is well familiar with the proper reporting of *357 rental income from rental property he owns. The income is fully taxable and petitioner is required to report it on his return against which appropriate deductions may be taken. Absent the itemized deductions taken by petitioner, and allowed by respondent, with respect to real estate taxes and mortgage interest, petitioner presented no evidence of other expenses incurred in connection with the rental of the Boonton residence. Accordingly, the rental income must be reported in full. To be entitled under section 38 to an investment tax credit on the purchase of his dictating machine, petitioner must show that the machine falls within the definition of section 38 property. Section 48(a)(1) defines section 38 property as including tangible personal property with respect to which depreciation is allowable. Section 1.48-1(b), Income Tax Regs., provides that a deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation. *358 However, a deduction for depreciation is not "allowable" if the cost is recovered through deduction of the full cost in one taxable year Section 1.48-1(b)(3), Income Tax Regs.; Coca-Cola Bottling Co. of Baltimore v. United States, 487 F. 2d 528 (Ct. Cl. 1973). In the instant case, petitioner fully expensed the dictating machine by deducting its full cost on his 1976 return. By so doing, the basis of the machine was reduced to zero, rendering the machine undepreciable, and therefore it does not simultaneously qualify as section 38 property entitled to an investment tax credit. Section 280A allows a taxpayer to deduct expenses attributable to a portion of his dwelling unit which is used exclusively and on a regular basis as a taxapyer's principal place of business. Section 280A(c)(5) limits the deduction so as not to exceed the gross income derived from such use. In view of these requirements, we coclude that none of the activities undertaken by petitioner in his home office will support a home office expense deduction. First, petitioner's real *359 estate investment activity cannot support the deduction because it has not been shown that such activity amounted to a trade or business, a necessary element under section 280A(c)(1)(A). Curphey v. Commissioner, 73 T.C. 766 (1980), on appeal (9th Cir. Nov. 24, 1980). Second, insofar as section 280A(c)(5) limits a home office expense deduction from exceeding the gross income derived from the use of the home office, petitioner cannot base his deduction on his book writing activity which earned him no income in 1977. Lastly, petitioner readily admits his office on CCM's campus was his principal place of business with respect to his employment as a professor. Therefore, by his own admission, the use of his home office with respect to his professorial activities does not meet the requirements of section 280A. The fact that it is maintained for the convenience of CCM is irrelevant if the threshhold requirement that it be his principal place of employment is not met. Finally, for petitioner's sake, we note that the appropriate and helpful test raised by petitioner was the old test applied before the enactment of section 280A. See section 162(a); Peiss v. Commissioner, 40 T.C. 78, 83-84 (1963). *360 Inasmuch as petitioner is not entitled to a deduction for home office expenses, he cannot deduct depreciation of the rug used in the home office. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. See Herder v. Commissioner, T.C. Memo. 1979-323↩ (where the travel expenses of a taxpayer's children who accompanied him on a business trip were disallowed for lack of a bona fide business purpose".