**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 04–C–0764–C.

United States District Court, W.D. Wisconsin.

July 11, 2005.

Naikang Tsao, R. Lee Christie, Madison, WI, for Plaintiff.

Stephen Sinnott, Acting U.S. Attorney, Madison, WI, Anne Norris Graham, U.S. Dept of Justice, Tax Division, Washington, DC, for Defendant.

OPINION AND ORDER

CRABB, District Judge.

This is a civil action to recover alleged overpayments of federal income tax collected from plaintiff American Family Mutual Insurance Company for its taxable

years ending December 31, 1987, 1988 and 1989. The dispute between the parties is a limited one concerning the proper treatment for tax purposes of plaintiff's income from premiums. Property and casualty insurers such as plaintiff account for their earned premium income by computing the increase in the current year's "unearned premiums" (premiums collected when a policy is sold but considered not fully earned until the policy period has expired) over the prior year's unearned premiums, with the difference subtracted from their gross premiums written for the current year to determine premiums earned in the taxable year.

In 1986, Congress amended 26 U.S.C. § 832(b)(4), reducing to 80% the amount of unearned premiums insurers were to use in calculating the current year's increase in unearned premiums. The effect of the reduction would have been that 20% of the unearned premiums received in the 1986 tax year would have escaped taxation altogether. To avoid this, Congress added subsection (C) to § 832(b)(4), prescribing a transition adjustment that insurers were to take over the next six years.

Defendant United States contends that plaintiff is entitled to a transition adjustment calculated according to the § 832(b)(4)(C) procedure; plaintiff contends that it is entitled to use not only the adjustment set out in that statute but the adjustment provided in 26 U.S.C. § 481 as well, so as to take into account 20% of its unearned premiums from 1962, the year before it first became to subject to tax on its underwriting income. If plaintiff is correct, it would be entitled to a larger deduction from its taxable income for the 1987–1989 tax years than the government wants to allow it.

I conclude that plaintiff is not correct. Its arguments are creative but unfounded in law or logic. In effect, it wants the explicitly prospective change in § 832(b)(4) to have retroactive effect for the year before it first became liable for taxes on its underwriting income.

When Congress amended § 832(b)(4) to reduce the amounts for unearned premiums, it prescribed the procedure for making the transition from the deduction of 100% to 80% of unearned premiums in one year; that procedure leaves no room for application of § 481, which is a statute of general application to be used in situations in which a taxpayer changes its method of accounting voluntarily or by direction of the IRS and the change results in a duplication or omission of income. Even if Congress's prescription of a specific procedure did not preempt § 481, plaintiff cannot use § 481 as justification for an adjustment of its 1962 unearned premiums because those premiums do not meet the criterion in § 481 that they be either duplicated or omitted income resulting from a change in a method of accounting. Moreover, § 481 does not apply to the taxable income of any year prior to the year in which a change in accounting took effect; the § 832(b)(4) change was effective in the 1987 tax year. Finally, §§ 832(b)(4) and 481 are not irreconcilable as plaintiff asserts; they apply in different situations. Section 832(b)(4) is a statute with specific application to one particular change Congress has made in the calculation of unearned premiums for tax purposes; § 481 applies when Congress makes a change in the method of accounting only when Congress provides specifically for its application or when it makes no provision for a transition adjustment.

No relevant facts are in dispute. The parties agree that the following facts are both undisputed and material.

## UNDISPUTED FACTS

Plaintiff American Family Mutual Insurance Company is a mutual property and

casualty insurance company. It is subject to federal income tax as an insurance company other than a life insurance company. Its underwriting income first became subject to federal income tax in 1963. In that year, it used 100% of its unearned premiums as of December 31, 1962 in calculating its increase in unearned premiums for 1963.

For the tax year 1987, plaintiff reported unearned premiums in the amount of $359,394,464. In its 1987 tax return, it added to its gross premiums a transitional adjustment of $11,583,648, which it calculated by taking three and one-third percent of its 1962 unearned premiums, which amounted to $11,885,010, and subtracting the resulting $396,167 from its "statutory transitional adjustment" of $11,979,815 (three and one-third percent of its 1986 unearned premiums of $359,394,464). The Internal Revenue Service disallowed the negative adjustment.

Plaintiff filed timely claims for refund of taxes paid for the years 1987–1989. (Even though it did not pay as much tax on its earned premiums as defendant contends it should have, it will be entitled to a refund if it prevails in this case because of other adjustments of its federal income taxes for the years in issue that met or exceeded the amount in dispute in this case.) Plaintiff received a formal notice of disallowance in 2002.

## OPINION

Insurance companies such as plaintiff sell policies for a set premium paid in advance that is not fully "earned" until the coverage period ends. A company that sells a policy in May takes on liability that does not end until the following May. If its accounting year ends in December, it will have earned only 7/12 of a year's income in the year in which it sold the policy. It reports the dollar amounts of premiums that have been received but not earned as "unearned premiums."

Before 1986, the tax code required insurance companies to calculate the "premiums earned" portion of their taxable income for a given year by deducting the year's increase in unearned premiums. A company was to calculate its current year's gross premiums written, add the previous year's unearned premiums and deduct the current year's unearned premiums. The result would be the sum of the current year's gross premiums plus or minus the difference between the unearned premiums in the previous year and those in the current year. An example:

| ABC Insurance Co.'s 2005 gross premiums written: | $1,000,000 |
|---|---|
| Preceding year's unearned premiums: | + 597,000 |
| | 1,597,000 |
| Current year's unearned premiums: | − 618,312 |
| Premiums earned in taxable year: | 978,688 |

In 1986, in the Tax Reform Act, Congress modified the definition of taxable income for insurance companies such as plaintiff in a way that has become known as the "twenty-percent haircut." The purpose was to get a closer match between the year in which the company incurred the expense of earning the deferred premium income and the year in which it earned the premium income "economically." The practical result was to decrease the first year's increase in unearned premiums by twenty percent. Beginning in the tax year 1987, an insurer would add 80% of the previous year's unearned premiums to its gross premiums written and then subtract 80% of the current year's unearned premiums.

Under the prior law, when the insurer deducted 100% of the previous year's unearned premiums, it did so knowing that the full amount of those premiums would be added to the succeeding year's taxable income. The change to 80% meant that 20% of an insurer's unearned premiums for the 1986 tax year would escape taxa-

tion altogether. To avoid this, Congress provided a transitional adjustment in § 832(b)(4)(C). This provision allows the government to collect the otherwise forfeited taxes over the course of the six following years. For each of the years 1987 to 1992, insurance companies were to add to their gross premiums written an amount equal to three and one-third percent of their 1986 unearned premiums.

■ Taking the position that § 832(b)(4) represented an accounting change, plaintiff claimed the additional benefit of 26 U.S.C. § 481, which requires (or allows) taxpayers to make certain adjustments to their taxable income if a change in the taxpayer's method of accounting requires the adjustments to avoid a resulting duplication or omission of income. Relying on § 481, plaintiff made a second adjustment: a negative one derived from its unearned premiums as of December 31, 1962, the last year before its underwriting income was taxed.

Plaintiff's argument for utilizing this procedure proceeds in this fashion: First, when Congress enacted § 832(b)(4), it was effectuating a change in the method of accounting for unearned premiums of insurance companies such as plaintiff. Generally, any change in a method of accounting implicates § 481. Second, Congress had no intention of preempting § 481. We know this because the legislative history of § 832(b)(4) shows that Congress was aware of the fact that a transition adjustment would be required to avoid substantial income inclusion in the first taxable year after the 20% reduction took effect. Joint Committee on Taxation, *General Explanation of the Tax Reform Act of 1986*, May 4, 1987, at 597, S.Rep. No. 313, 99th Cong., 2d Sess., 497 ("Congress adopted this rule [set out in § 832(b)(4)(C) ] because the treatment of the outstanding unearned premium balance is designed to avoid a substantial income inclusion in the first taxable year after the effective date."). The only possible source of this awareness is Congress's knowledge that § 481 would come into play with § 832(b)(4)'s change in the method of accounting, requiring property and casualty insurance companies to make adjustments to account for their otherwise untaxed earned premium income. Plaintiff adds two additional reasons for its belief that § 832(b)(4) does not render § 481 inapplicable. One is that Congress's intent that § 481 apply can be inferred from its failure to specify its nonapplicability. Congress knows how to specify non-application when that is its intent. The second is that, under the Supreme Court's holding in *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d·80 (1981), courts have an obligation to reconcile two statutes such as § 832(b)(4) and § 481 when both seem to govern the same situation. In plaintiff's situation, the obvious way to reconcile the two statutes is to apply both of them in sequence.

Third, plaintiff's tax history is directly relevant in calculating the correct amount of the transition adjustment required by a change in accounting. "Mutual insurers like [plaintiff] did not become taxable on their 'underwriting income' (premiums minus losses and expenses) until 1963. For that reason, a mutual insurer's 'premiums earned' before 1963 are not part of the company's lifetime taxable income.' " Plt.'s Br., dkt. # 18, at 5.

Fourth, "[n]umerous cases, and IRS rulings, make clear that the proper transition adjustment under section 481," *id.*, requires two steps: (1) determining the adjustment to income required under § 832(b)(4)(C); and (2), under § 481, adding or subtracting items "where the item involved was excluded by law from taxable income during the earlier 'tax history' of the company." *Id.*

Plaintiff's argument sets up a straw man at the outset. For the purposes of this motion, defendant does not deny that the 20% change is a change in a method of accounting. What it does deny is that the new requirement is a change in a method of accounting *that implicates § 481*. According to defendant, § 481 comes into play when a taxpayer or the Commissioner of Internal Revenue initiates a change in accounting that distorts the taxpayer's income for tax purposes. In those instances, § 481 provides the procedure for handling the distortion, whether it be a duplication of income or an omission. When Congress initiates the change, however, it decides how any resulting distortion is to be treated. It may specify the rules for the transition, as it did in § 832(b)(4)(C); it may invoke § 481's transition provisions, *see, e.g.,* Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 961, § 471, § 1088 and § 453C; or it may expressly prohibit any adjustments, *see, e.g.,* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 216(b)(1), 98 Stat. 494 (1984). Only when Congress says nothing about any transition procedure is there room to argue that § 481 applies by implication. In enacting § 832(b)(4)(C), Congress left no vacuum for § 481 to fill; it specified exactly how plaintiff and other insurance companies were to account for the 20% of unearned premiums from 1986 that would otherwise have gone untaxed.

I agree with defendant that § 832(b)(4) is the exclusive procedure for the transition adjustment. Congress had no need to say that § 481 did not apply in light of its explicit directive for handling the transition from 100% to 80% of unearned premiums. Its intention was obvious.

If there were any question about this point, it would be resolved by a review of § 481, which by its terms applies only after there has been a change in the taxpayer's method of accounting and only to prevent the duplication or omission of taxable income. The transition procedure that Congress provided in § 832(b)(4)(C) prevents the duplication or omission of any amounts resulting from the change in deductions from 100% to 80% of the year's increase in unearned premiums. The transition adjustment protected both plaintiff and defendant: plaintiff was not required to pay taxes on any more income than it would have without the change in § 832(b)(4) and defendant did not forfeit tax properly due on plaintiff's premium income. "The purpose of § 481 is to prevent either a distortion of taxable income or a windfall to the taxpayer arising from a change in accounting method when the statute of limitations bars reopening of the taxpayer's earlier returns." *Suzy's Zoo v. Commissioner,* 273 F.3d 875, 883 (9th Cir. 2001) (citing *Western Casualty & Surety Co. v. Commissioner,* 571 F.2d 514, 519 (10th Cir.1978); *Graff Chevrolet Co. v. Campbell,* 343 F.2d 568, 572 (5th Cir. 1965)). In plaintiff's situation, § 481 had no role to play.

As to the "reconciliation" argument, plaintiff has created another straw man. Sections 832(b)(4) and 481 are not irreconcilable. Section 481 is a default provision, to be applied whenever a change in accounting results in duplicated or omitted income and no other provision applies to the handling of such income. Section 832(b)(4)(C) did not work a "repeal" of § 481, as plaintiff asserts; the statute remains alive and well and ready for use in appropriate circumstances. It was simply preempted in this particular circumstance by Congress's decision to specify a particular transition adjustment for the 20% reduction in unearned premiums.

■ The asserted importance of plaintiff's "tax history" is a chimera. Plaintiff cannot cite a case or statute that requires consideration of a company's tax history

when Congress enacts a prospective change in the treatment of an item of income. Section 481 contains no reference to tax history; to the extent it allows taxpayers to take into account accounting in previous years, it does so only to allow (or require) taxpayers to make adjustments related directly to the change in the method of accounting. It does not permit taxpayers to go back earlier than the year of the change. *Cameron Iron Works v. United States*, 224 Ct.Cl. 17, 621 F.2d 406, 410 (1980) ("section 481 does not provide for adjustments to the taxable income of any year prior to the year of the change").

In support of its position that "numerous cases, and IRS rulings," require a two-step adjustment "where the item involved was excluded by law from taxable income during the earlier 'tax history' of the company," Plt.'s Br., dkt. #18, at 5, plaintiff begins with a citation to Revenue Procedure 78–6, issued in the wake of the Supreme Court's decision in *Commissioner v. Standard Life & Accident Ins. Co.*, 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977). *Standard Life* resolved a dispute over the proper tax treatment of deferred and uncollected premiums on life insurance policies under the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–820. The Court held that life insurers were to pay taxes on the "net valuation" portion of their unpaid premiums, that is, the portion that state law requires life insurers to add to their reserves.

Revenue Procedure 78–6 was intended to help life insurers avoid a potential duplication of premium income after they adopted the tax treatment endorsed by the Supreme Court and made the corresponding changes in tax treatment in their 1977 returns. The companies were to determine that portion of the gross amount of premiums to be included in gross income for the 1977 tax year under the treatment specified in *Standard Life* that was also included in gross income for the 1976 tax year and then reduce this amount by the loading portion of deferred and uncollected premiums as of January 1, 1958. (The "loading portion" is the amount of the premium that covers salespersons' commissions and other expenses such as state taxes, overhead and profits.). Loading premiums were not taxable before 1958; subtracting the loading portions of the 1957 premiums would not result in double taxation of any income. (One way to think about this adjustment is that it is a little like denying a taxpayer a deduction for his 1958 home mortgage costs when he was not liable for income taxes in that year.)

Plaintiff relies on two additional cases: *Security Benefit Life Ins. Co. v. United States*, 517 F.Supp. 740 (D.Kan.1980), *aff'd on other issues*, 726 F.2d 1491 (10th Cir. 1984), and *North Central Life Ins. Co. v. Commissioner*, 92 T.C. 254, 1989 WL 7477 (1989). *Security Benefit* involved the tax treatment of gross premiums of life insurers. The court reaffirmed the IRS's position that the insurer was to compute the portion of the gross amount of premiums to be included in 1977 as a result of *Standard Life* that had been included in 1976 and then reduce the amount by the loading portion of deferred and uncollected premiums as of January 1, 1958, to prevent the double omission of an item of income, just as Revenue Procedure 78–6 directed. *North Central* involved the taxpayer's accrual of commissions for which it had no fixed tax liability. The tax court held that the commissions were deductible as they accrued rather than when they were added to reserves and that changing the timing for deduction constituted a change in the method of accounting under § 481, giving the IRS authority to adjust plaintiff's taxable income to prevent the omission of taxable income. *Id.* at 290, 1989 WL 7477. The tax court upheld the Commissioner's adjustment requiring the insurer to add to

its 1974 underwriting income the difference between the reserve balance as of December 31, 1973 less the reserve balance as of December 31, 1957. The tax court did not explain why it subtracted the 1957 balance rather than the balance of some other year; presumably, it was because 1957 was the last year before the taxpayer's underwriting income was subject to tax. The court had no reason to explain the use of the 1957 balance; it was deciding whether a § 481 adjustment was proper, not the manner in which the adjustment was calculated.

Plaintiff argues, in ipse dixit fashion, that its own situation is parallel to that of the life insurers in *Security Benefit* and *North Central;* therefore, this court should conclude as a matter of law that because plaintiff was not subject to taxes on its premium income before 1963, it must be allowed to subtract its pre–1963 unearned premiums from its § 832(b)(4)(C) adjustment. Why this is so is left mostly to the reader's imagination. Plaintiff is not a life insurer; it was not affected by the decision in *Standard Life,* which had the effect of requiring life insurance companies to recalculate their gross premiums since January 1, 1958 because the proper method of calculation had been in dispute since then; no similar reason for reduction is present in this case because plaintiff calculated its premiums earned income properly between 1962 and 1987; and in any event, § 832(b)(4) applies only to future years. The "two-step procedure" that plaintiff characterizes as required for insurance companies with a "tax history" seems to be a creature of its own invention. Plaintiff has not cited a case or revenue ruling recognizing a "two-step procedure." *Security Benefit* and Revenue Procedure 78–6 do nothing more than describe situations in which the IRS or court was approving both an addition and subtraction for a particular adjustment. *North Central* involved only a subtraction

(taking the reserve balance as of the end of 1957 from the reserve balance as of 1973). That it was appropriate to add and then subtract amounts in the particular situations in which they were used does not mean that both steps are required in every situation. If there is a need for a negative adjustment to prevent a duplication or omission of taxable income, the second step should be employed. If not, the second step is unnecessary and irrelevant. This is true for two other cases that plaintiff cites, involving accounting changes requiring adjustments for items such as customer refunds in the case of *Gas Light Company of Columbus v. Commissioner,* T.C. Memo, 1986–118, 1986 WL 21832 (U.S.Tax Ct.1986), or the treatment of overhead costs in inventory in the case of *Dearborn Gage Co. v. Commissioner,* 48 T.C. 190, 1967 WL 931 (1967). Plaintiff is unable to point to any case law, let alone case law that has precedential value for this court, that supports its theory that a two-step adjustment is required for companies with a tax history.

Plaintiff continues to assert that 20% of its 1962 unearned premiums is duplicated income. It concedes that this amount was taxed properly under the tax laws then in effect but argues that the enactment of the new accounting method in 1986 produced duplication of income: in retrospect, plaintiff says, it can be seen that the 20% of premium income does not belong in its lifetime tax base. Therefore, plaintiff argues, it is entitled to make a negative adjustment for the item for the years 1987–1992. The flaw in this argument is that the 20% of 1962's unearned premiums belonged in 1963 under the tax laws then in effect and was taxed properly in 1963. Deducting that amount from the 1987–1992 period is not necessary to correct a 1963 accounting error because none occurred. Plaintiff needs no deduction to prevent double taxation of the same income. Its

unearned premiums as of the end of 1962 were taxed only once, in 1963. They will never be taxed again. That they were taxed at 100% is an artifact of the 1963 tax laws, not of any omission or duplication resulting from the 1986 changes to § 832(b)(4).

It is clear that § 481 does not apply to plaintiff's situation even if it were not preempted by § 832(b)(4)(C). Section 481 operates to prevent double *taxation*, not to adjust for items that a taxpayer contends do not belong in its lifetime tax base.

In summary, I conclude that plaintiff cannot claim any additional adjustment under § 481. Although the 20% adjustment is a change in accounting method, it is not a change within the meaning of § 481, because § 832(b)(4)(C) provides explicit instructions for the transition, eliminating the possibility of any duplicate taxation arising from the 20% reduction and making § 481 inapplicable for that purpose. Plaintiff's 1963 income was properly taxed under the law in effect in 1963 and will not be taxed again under § 832(b)(4), so no § 481 adjustment is necessary to prevent double taxation of that income. In any event, plaintiff could not use § 481 to make adjustments in its taxable income for years preceding the year in which the change in accounting took effect, in this case 1987. Finally, sections 832(b)(4)(C) and 481 are not in conflict. Section 832(b)(4)(C) applies to a specific act of Congress whereas § 481 applies to situations in which a change in a method of accounting is initiated by a taxpayer or by the Commissioner of Internal Revenue or when Congress specifies that it should apply or when Congress makes no provision for the handling of a transition adjustment, providing a ground for arguing that the statute is applicable by implication.

## ORDER

IT IS ORDERED that the motion for summary judgment filed by plaintiff American Family Insurance Company is DENIED and the motion for summary judgment filed by defendant United States of America is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.